RACHAEL A. HONIG
Acting United States Attorney
KRISTIN L. VASSALLO
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-2835
Fax: (973) 297-2010
Email: kristin.vassallo@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY DAVIS, | |
| *Petitioner,* | HON. NOEL L. HILLMAN |
| v. | *Civil Action No.* 21-2174 (NLH) |
| WARDEN DAVID ORTIZ, | |
| *Respondent.* | |

## RESPONDENT'S ANSWER TO PETITION FOR A
## WRIT OF HABEAS CORPUS

RACHAEL A. HONIG
ACTING UNITED STATES ATTORNEY
*Attorney for Respondent*

KRISTIN L. VASSALLO
Assistant United States Attorney

TABLE OF CONTENTS

Table of Contents..........................................................................................................i

Table of Authorities ....................................................................................................ii

Preliminary Statement ............................................................................................... 1

Statement of Facts ..................................................................................................... 1

    I.   Calculation of Davis's Sentence............................................................... 1

    II.  Earned Time Credits Under The First Step Act.................................... 2

    III. Davis's Programming at FCI Fort Dix .................................................. 6

    IV. Davis's Failure to Exhaust Administrative Remedies ....................... 8

Argument ..................................................................................................................... 8

    I.   Davis Failed to Exhaust Administrative Remedies With Respect to the Claim Raised In This Petition ........................................................................... 8

    II.  Davis Is Ineligible For Any Earned Time Credits ........................... 11

    A.   Implementation of the Risk And Needs Assessment System Is Committed to the Discretion of the BOP ............................................................. 11

    B.   Davis Has Not Taken The Programming Necessary to Obtain Earned Time Credits ................................................................................................. 16

Conclusion ................................................................................................................ 19

i

<u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Arias v. U.S. Parole Comm'n*, 648 F.2d 196 (3d Cir. 1981) ................................... 9, 10

*Auer v. Robbins*, 519 U.S. 452 (1997) ........................................................ 12

*Briley v. Warden Fort Dix FCI*, 703 F. App'x 69 (3d Cir. 2017) ................................... 9

*Brown v. Grondolsky*,
    No. 09-3290 (RMB), 2009 WL 2778437 (D.N.J. Aug. 31, 2009) ............................. 10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1985) ............................................................. 11, 12

*DeFoggi v. United States*,
    No. 20-3889 (NLH), 2020 WL 2899495 n.1 (D.N.J. June 3, 2020) .......................... 2

*Gambino v. Morris*, 134 F.3d 156 (3d Cir. 1998) ........................................ 10

*Goodman v. Ortiz*, No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020) .... 4

*Hare v. Ortiz*,
    No. No. 20-14093 (RMB), 2021 WL 391280 (D.N.J. Feb. 4, 2021) ....... 14. 15, 17, 18

*Llufrio v. Johns*, No. 19-122, 2020 WL 5248556 (S.D. Ga. Aug. 13, 2020), *adopted*,
    2020 WL 5245133 (S.D. Ga. Sept. 2, 2020) ............................................. 2

*Lopez v. Davis*, 531 U.S. 230 (2001) ....................................................... 12

*Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) ................................... 9

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .................................................... 12, 13

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996) .................................. 11

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) .......................................... 12

*United States v. Mead*, 533 U.S. 218 (2001) .............................................................. 12

*Vasquez v. Strada*, 684 F.3d 431 (3d Cir. 2012) ........................................................ 9

*Velez v. Zickefoose*,
   No. 10-3992 (NLH), 2010 WL 5186158 (D.N.J. Dec. 15, 2010) ............................ 10

*Woodford v. Ngo*, 548 U.S. 81 (2006) ................................................................... 9, 10

## <u>Federal Statutes</u>

18 U.S.C. § 3621 ............................................................................................................. 2
18 U.S.C. § 3621(h)(1) ................................................................................................. 15
18 U.S.C. § 3621(h)(1)(A) .................................................................................... 13, 15
18 U.S.C. § 3632 ............................................................................................................. 3
18 U.S.C. § 3632(a) ................................................................................................. 3, 15
18 U.S.C. § 3632(a)(1) ................................................................................................. 13
18 U.S.C. § 3632(a)(3) ............................................................................................. 3, 16
18 U.S.C. § 3632(d) ............................................................................................. 2, 6, 14
18 U.S.C. § 3632(d)(4)(A) ............................................................................. 1, 7, 13, 17
18 U.S.C. § 3632(d)(4)(B) ........................................................................................... 15
18 U.S.C. § 3635(3) ....................................................................................................... 5
18 U.S.C. § 3635(3)(A) ..................................................................................... 13, 14, 19
18 U.S.C. §§ 1341 ........................................................................................................... 1
28 U.S.C. § 2241 ............................................................................................................. 9

## **Federal Regulations**

28 C.F.R. § 523.40(b)..................................................................13
28 C.F.R. § 523.41(a)..................................................................21
28 C.F.R. § 523.41(c)(1)..............................................................20
28 C.F.R. § 523.42(b)..................................................................24
28 C.F.R. § 523.42(d)(1)..............................................................22
28 C.F.R. § 542.10....................................................................10
28 C.F.R. § 542.13....................................................................10
28 C.F.R. § 542.14(a)..................................................................10
28 C.F.R. § 542.15(a)..................................................................10
28 C.F.R. § 545.21(f)..................................................................24
28 C.F.R. § 545.24(a)..................................................................24

PRELIMINARY STATEMENT

Respondent David Ortiz, warden of the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), respectfully submits this memorandum of law in opposition to the petition for a writ of habeas corpus brought by petitioner Anthony Davis.  Davis, a federal inmate at FCI Fort Dix, argues that the Federal Bureau of Prisons has failed to award him one year and fifteen days of Earned Time Credit for "Evidence-Based Recidivism Reduction" programs under the First Step Act, 18 U.S.C. § 3632(d)(4)(A).  *See* Petitioner's Writ of Habeas Corpus (ECF No. 1) ("Pet.") at PageID 12.  For the reasons that follow, the Court should dismiss Davis's petition for failure to exhaust administrative remedies or deny the petition on the merits.

STATEMENT OF FACTS

I.   Calculation of Davis's Sentence

On January 31, 2014, Davis pled guilty to attempt and conspiracy to commit bank fraud and possession of stolen mail matter, in violation of 18 U.S.C. §§ 1341 and 1708. *See United States v. Smith,* No. 13-cr-484 (S.D.N.Y.), January 31, 2014 minute entry.  On October 23, 2014, the court sentenced Davis to an aggregate term of 120 months in prison and five years of supervised release.  *See* Declaration of Robin Summers ("Summers Decl."), Ex. A (Public Information Inmate Data) at 2.  The BOP has calculated Davis's sentence as commencing on October 23, 2014, the date of his sentencing.  *See id.* at 2-3.  The BOP has awarded Davis 135 days of prior custody

1

credit for time spent in custody before his sentencing.  *See id.* at 3.  Davis's projected release date is February 15, 2023.  *See id.*

II.    Earned Time Credits Under the First Step Act

The First Step Act of 2018, signed into law on December 21, 2018, amends 18 U.S.C. § 3621, the statute governing the calculation of federal sentences.  Among other provisions, the First Step Act required the Attorney General, within 210 days of the date of enactment, to develop a "risk and needs assessment system" for federal inmates that would "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs."  18 U.S.C. § 3632(d). The Attorney General met this deadline on July 19, 2019, when the BOP released the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN").  *See Llufrio v. Johns,* No. 19-122, 2020 WL 5248556, at *2 (S.D. Ga. Aug. 13, 2020), *report and recommendation adopted*, 2020 WL 5245133 (S.D. Ga. Sept. 2, 2020).  PATTERN "determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk."  *DeFoggi v. United States*, No. 20-3889 (NLH), 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020) (quotations omitted).  "The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct."  *Id.*

The First Step Act also directed the BOP to "implement and complete an initial intake risk and needs assessment for each prisoner" and "begin to assign prisoners to appropriate  evidence-based  recidivism  reduction  programs  based  on  that

determination" within 180 days of PATTERN's release date (that is, by January 15, 2020). 18 U.S.C. § 3621(h)(1)(A).

The BOP has identified the following "needs" that agency staff should assess for each inmate using PATTERN:

- Anger/Hostility
- Finance/Poverty
- Antisocial Peers
- Medical
- Cognitions
- Mental Health
- Dyslexia
- Recreation/Leisure/Fitness
- Education
- Substance Abuse
- Family/Parenting
- Trauma
- Work

*See* Declaration of Bradley Vogt ("Vogt Decl.") Ex. 1 (November 2019 Memo) at 1. The BOP has also identified a number of screening measures staff may use to assess these needs. *See id.* at 3-15.

In enacting 18 U.S.C. § 3632, the First Step Act directed the BOP to use the Risk and Needs Assessment to classify inmates at risk of recidivism, match inmates with suitable programs "based on the prisoner[s'] specific criminogenic needs," and offer incentives for completing these programs, including Earned Time Credit toward pre-release custody. 18 U.S.C. § 3632(a)(3), *see generally* 18 U.S.C. § 3632(a), (d). The BOP has approved a number of "evidence-based recidivism reduction programming" and "productive activities" ("EBRR programs" and "PAs," respectively) that inmates

may complete to obtain Earned-Time Credits.  *See* Vogt Decl. Ex. 2 (EBRR and PA Guide) at 1-5.[1]

The First Step Act defines "Evidence-based Recidivism Reduction Program" and Productive Activities" as follows:

(3) EVIDENCE-BASED RECIDIVISM REDUCTION PROGRAM.— The term "evidence-based recidivism reduction program" means either a group or individual activity that—

(A) has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism;

(B) is designed to help prisoners succeed in their communities upon release from prison; and

(C) may include—

(i) social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;

(ii) family relationship building, structured parent-child interaction, and parenting skills;

(iii) classes on morals or ethics;

(iv) academic classes;

(v) cognitive behavioral treatment;

(vi) mentoring;

(vii) substance abuse treatment;

(viii) vocational training;

(ix) faith-based classes or services;

---

[1]     The BOP must fully implement this programming by January 15, 2022.  *See Goodman v. Ortiz*, No. 20-7582 (RMB), 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020) (noting full implementation date).

(x) civic engagement and reintegrative community services;

(xi) a prison job, including through a prison work program;

(xii) victim impact classes or other restorative justice programs; and

(xiii) trauma counseling and trauma-informed support programs.

….

(5) PRODUCTIVE ACTIVITY.—

The term "productive activity" means either a group or individual activity that is designed to allow prisoner determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating, and may include the delivery of the programs described in paragraph (1) [1] to other prisoners.

18 U.S.C. § 3635(3), (5).

To receive Earned Time Credit under the First Step Act, an inmate must successfully complete one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate. *See* Vogt Decl. ¶ 7. The statute provides:

(A) In general.— A prisoner, except for an ineligible prisoner under subparagraph (D), *who successfully completes evidence-based recidivism reduction programming or productive activities*, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

5

18 U.S.C. § 3632(d)(4)(A)(i)-(ii) (emphasis added).  The BOP's list of approved EBRR programs and PAs also sets out the duration that constitutes "completion" of the program/activity.  *See* Vogt Decl., Ex. 2 (EBRR and PA Guide) at 4-42.

III.   Davis's Programming at FCI Fort Dix

On December 2, 2019, BOP staff found Davis eligible to earn Earned Time Credits under 18 U.S.C. § 3632(d) because he did not have a disqualifying offense under the statute.  *See* Vogt Decl. ¶ 3, Ex. 3 (Inmate History – FSA) at 1.  On that same date, BOP staff conducted a Risk and Needs Assessment for Davis and determined that he had a low risk of recidivism.  *See* Vogt Decl. ¶ 4, Ex. 3 (Inmate History – FSA) at 1.  On July 13, 2020 and November 17, 2020, BOP staff again conducted a Risk and Needs Assessment for Davis, and determined he had a low risk of recidivism.  *See* Vogt Decl. ¶ 4, Ex. 3 (Inmate History – FSA) at 1.

With respect to needs, BOP staff have determined that Davis has the following needs as of the indicated dates:

- Cognitions, as of December 5, 2019

- Finance/poverty, as of August 6, 2020

- Medical, as of October 13, 2020

- Recreation/leisure/fitness, as of October 13, 2020

- Work, as of August 8, 2020

*See* Vogt Decl. ¶ 6, Ex. 4 (Inmate Profile) at 1.   Davis does not have a need in any other category.  *See* Vogt Decl. ¶ 6.

6

With respect to specific programming, in September 2020 Davis completed the Money Smart Program, a 28-hour program that met his need in finance. *See* Vogt Decl. ¶ 8, Ex. 5 (Inmate History – PT/Other) at 1. Because 18 U.S.C. § 3632(d)(4)(A) allows for 10 days of credit for every 30 days (*i.e.* 240 hours) of successful programming, Davis is not yet eligible for any Earned Time Credits based on his completion of the 28-hour Money Smart class.

Moreover, Davis has not completed any additional approved EBRR or PA courses since his needs were assessed. *See* Vogt Decl. ¶ 9, Ex. 3 (Inmate History – FSA) at 1, Ex. 5 (Inmate History – PTO) at 1, Ex. 6 (Education Transcript) at 1. Although Davis has completed several courses after his needs assessment, they do not qualify as an EBRR or PA and thus cannot serve as basis for obtaining Earned Time Credits. *See* Vogt Decl. ¶ 9. And while Davis has one class on his transcript that is FSA-eligible, the Basic GED Course, he took that class in 2015 – years before passage of the First Step Act – and did not complete that program. *See id.*, Ex. 6 (Education Transcript) at 1.

Finally, Davis's work assignments do not qualify as an EBRR or PA, and cannot provide him with Earned Time Credits. *See* Vogt Decl. ¶ 10, Ex. 7 (Inmate History – Work) at 1. In sum, Davis has not yet completed 30 days (240 hours) of approved EBRR programs or PAs that meet his assessed needs and would thus warrant application of Earned Time Credit.

IV.   Davis's Failure to Exhaust Administrative Remedies

BOP has established a four-step process for federal inmates to exhaust administrative remedies. *See* 28 C.F.R. § 542.10 *et seq.* To comply with this process, an inmate generally must first attempt to informally resolve his dispute with prison staff. *See* 28 C.F.R. § 542.13. If these efforts fail, the inmate must then submit a BP-9 administrative remedy request to the warden of his institution within twenty days of the event or decision underlying the request. *See* 28 C.F.R. § 542.14(a), (c). If the administrative remedy request is denied, the inmate must then file a BP-10 appeal with the appropriate Regional Director within twenty days of the date of the warden's response. *See* 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate must then appeal that decision by filing a BP-11 appeal with the BOP's Central Office, General Counsel, within thirty days from the date of the Regional Director's response. *See id.*

According to BOP records, Davis has not filed any administrative remedies with the BOP. *See* Summers Decl. ¶ 4, Ex. B (Administrative Remedy Generalized Retrieval) at 1.

ARGUMENT

I.   Davis Failed to Exhaust Administrative Remedies With Respect to the Claim Raised in this Petition

The Court should dismiss Davis's petition because he did not exhaust administrative remedies on his present claim.

Before a federal inmate can seek habeas relief in district court pursuant to 28 U.S.C. § 2241, he must first exhaust his administrative remedies.  *See Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760-62 (3d Cir. 1996).  As the Supreme Court has recognized, the exhaustion requirement serves a number of critical interests:

> First, exhaustion protects administrative agency authority.  Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.

> Second, exhaustion promotes efficiency.  Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.  In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court.  And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

*Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (internal citations and quotation marks omitted).

Courts within this Circuit therefore require an inmate to exhaust administrative remedies because exhaustion promotes these important interests.  *See Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981) (noting that Third Circuit has "adhered to the exhaustion doctrine for several reasons: (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors") (citation omitted); *see also Briley v. Warden*

*Fort Dix FCI*, 703 F. App'x 69, 71 (3d Cir. 2017).  Indeed, although *Woodford* concerned the exhaustion requirement imposed by the Prison Litigation Reform Act, the purposes of exhaustion identified by the Court – protecting agency authority and promoting efficiency – apply equally to habeas petitions.  *See Woodford*, 548 U.S. at 93 ("In practical terms, the law of habeas, like administrative law, requires proper exhaustion[.]"); *Arias*, 648 F.2d at 199.

Although courts may excuse the exhaustion requirement for habeas petitions under limited circumstances, such as when exhaustion would be futile, *see, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998), courts routinely enforce the requirement where, as here, there is no compelling justification to excuse the petitioner's failure to exhaust.  *See, e.g., Velez v. Zickefoose*, No. 10-3992 (NLH), 2010 WL 5186158, at *3 (D.N.J. Dec. 15, 2010) ("it has been long established that an inmate's unjustified failure to pursue administrative remedies results in procedural default warranting decline of judicial review"); *Brown v. Grondolsky*, No. 09-3290 (RMB), 2009 WL 2778437, at *1-2 (D.N.J. Aug. 31, 2009) (exhaustion requirement "is diligently enforced by the federal courts" and futility exception applies only in "narrowly-defined circumstances") (citation omitted).

Applying these principles here, the Court should deny habeas relief.  According to BOP records, Davis has not filed any administrative remedy requests with the BOP, and thus has not raised any argument regarding the application of Earned Time Credits to the agency.  *See* Summers Decl. ¶ 4, Ex. B (Administrative Remedies Generalized Retrieval) at 1.  Because Davis provides no compelling justification for

failing to complete the administrative process before bringing this petition, the Court should find that his failure to exhaust precludes him from obtaining relief.

II.    Davis Is Ineligible for Any Earned Time Credits

Davis argues that the BOP has failed to award him an unspecified number of Earned Time Credits that he claims he has earned based on programming taken while incarcerated. This claim is unpersuasive. Davis is ineligible for Earned Time Credits because he has not completed 30 days of any EBRR or PA approved programs that meet an assessed need. Accordingly, he is not yet entitled to any credits and the Court should deny his request for habeas relief.

A.    Implementation of the Risk and Needs Assessment System Is Committed to the Discretion of the BOP

Under bedrock principles of administrative law, courts accord deference to an interpretation of a statute adopted by the agency that has been "charged with responsibility for administering the provision" by Congress. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1985); *see also Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 739 (1996) ("It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes that they are charged with administering."). Courts give weight to an agency's interpretation of a statute it administers because of the "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley*, 517 U.S. at 740-41. Courts similarly accord

11

deference to an agency's interpretation of its regulations.  *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 513 (1994).

Although courts accord deference to an agency's interpretation of a statute it administers, the level of deference varies. If Congress delegated authority to an agency to make rules with the force of law and the agency acted pursuant to that delegated authority in interpreting the statutory scheme, then courts review that statutory interpretation under the standards set forth in *Chevron. See United States v. Mead*, 533 U.S. 218, 226-27 (2001). Under *Chevron*, if the statute is silent or ambiguous, the courts will uphold the agency's interpretation if it "is based on a permissible construction of the statute." 467 U.S. at 845; *see also Lopez v. Davis*, 531 U.S. 230, 242 (2001) (holding that the BOP had the authority to fill the "statutory gap" in § 3621(e)'s early release provision in a reasonable manner in light of the Congress' "revealed design").

If *Chevron* does not apply, courts at a minimum accord deference to the agency's statutory interpretation under the standard set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Mead*, 533 U.S. at 231-32.  In *Skidmore*, the Supreme Court recognized that agency interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." 323 U.S. at 140. The Court therefore held that such agency interpretations are given "considerable and in some cases decisive weight," depending upon the "thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency

with earlier and later pronouncements, and all those factors which give it power to persuade[.]" *Id.*

The BOP has reasonably interpreted five provisions of the First Step Act relevant to Davis's claim for Earned Time Credits.

First, in section 3632(d)(4)(A), Congress provided that an inmate may obtain Earned Time Credits if he "successfully completes" EBRR programming and productive activities.   18 U.S.C. § 3632(d)(4)(A).   The BOP has interpreted this provision as requiring the inmate to actually complete the program in question, that is, it will not award Earned Time Credits for partial completion.  *See* 85 Fed. Reg. at 75271 (proposed regulation 28 C.F.R. § 523.41(c)(1)).   This interpretation is reasonable because the statute only awards credits to inmates who "successfully complete[]" the relevant programming.

Second, the BOP has interpreted the First Step Act as only requiring time credits for successful completion of EBRR programming and productive activities staff have <u>assigned</u> to the inmate based on their assessed needs.  *See* Fed. Reg. at 75271 (proposed regulation 28 C.F.R. § 523.40(b)).   This interpretation reasonably follows the intent of the First Step Act and several provisions within the Act.   The First Step Act directs the BOP to (1) assess inmates' recidivism risk and the criminogenic needs that increase their recidivism risk, 18 U.S.C. § 3632(a)(1), (3); (2) develop programming that is proven to reduce recidivism or maintain a low risk of recidivism, 18 U.S.C. § 3635(3)(A), (5); (3) assign inmates to those programs, 18 U.S.C. § 3621(h)(1)(A); and (4) provide incentives to encourage inmates to participate

in programming and thereby reduce their risk of recidivism, 18 U.S.C. § 3632(d). Based on this statutory scheme, Congress did not intend to reward inmates for completing programming in general; rather, Congress intended to reward inmates for reducing their risk of recidivism by participating in programming targeted to their specific needs.  Therefore, the BOP has reasonably interpreted the FSA to require staff to assign an inmate to a particular EBRR program or productive activity based on his specific needs before the inmate may obtain Earned Time Credits for successfully completing that programming.

Third, and related to the assignment of programming, the BOP has reasonably interpreted the statute to award credit for only those programs it has determined meet the statutory definitions of EBRR programming or productive activities.  *See* 85 Fed. Reg. at 75271 (proposed regulation 28 C.F.R. § 523.41(a)).  To award FSA time credits for any programming offered at an institution would run contrary to Congress's intent to incentivize participation in programs targeted to reduce recidivism.  Indeed, Congress explicitly defined EBRR programming to be one that "has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism."  18 U.S.C. § 3635(3)(A).

Fourth, the BOP has reasonably interpreted the First Step Act to only make Earned Time Credits available for EBRR programming and productive activities assigned and completed after January 15, 2020.[2]  *See* 85 Fed. Reg. at 75272 (proposed

---

[2]     In a recent decision, *Hare v. Ortiz*, Judge Bumb held that inmates can obtain

14

regulation 28 C.F.R. § 523.42(d)(1).  Congress indicated inmates may not earn time credits for successful completion of EBRR programming and productive activities completed "prior to the enactment of this subchapter."  18 U.S.C. § 3632(d)(4)(B). While Subchapter D establishes July 19, 2019, as an effective date for the development of the risk and needs assessment system, *see* 18 U.S.C. § 3632(a), Congress gave the Bureau to January 15, 2020, to begin to implement the system. *See* 18 U.S.C. § 3621(h)(1).  Implementation includes completing an inmate's initial risk and needs assessment and assigning the inmate to EBRR programming and productive activities.  18 U.S.C. § 3621(h)(1)(A).  To allow inmates to earn FSA time credits for successful completion of EBRR programming or productive activities before the BOP has assessed their risk and needs and assigned them to the programming is inconsistent with the congressional intent in enacting the FSA. Therefore, it is reasonable for the BOP to use January 15, 2020, as the starting date of when time credits can be earned.

Finally, for purposes of determining what qualifies as "30 days of successful participation" in EBRR programming and productive activities, the BOP has reasonably interpreted a "day" as one 8-hour period of programming.  *See* 85 Fed. Reg. at 75272 (proposed regulation 28 C.F.R. § 523.42(b), (c)). While a calendar day

---

Earned Time Credits for otherwise eligible EBRR programs or PAs completed after the effective date of the First Step Act, December 21, 2018.  *See Hare v. Ortiz*, No. No. 20-14093 (RMB), 2021 WL 391280, at *8 (D.N.J. Feb. 4, 2021).  The BOP respectfully disagrees with that holding in *Hare* and continues to believe that its interpretation of the statute is reasonable.  In this case, however, the Court need not reach this issue, because Davis did not complete any approved programming for an assessed need between December 21, 2018 and January 15, 2020.

encompasses 24 hours, defining a day of programming as 24 hours of programming is not reasonable as it potentially minimizes the incentivizing nature of time credits for successful completion of programming.  For purposes of inmate work assignments, the Bureau has indicated a "work day . . . ordinarily consists of a minimum of seven hours."  28 C.F.R. § 545.24(a).   Further, inmates may have a part-time work assignment to allow them to participate in programming for a portion of the day and work the remainder.  28 C.F.R. § 545.21(f).  Establishing a programming day under the FSA as an 8-hour period by reference to the BOP's policies on inmate work is a reasonable interpretation of the FSA.

B. Davis Has Not Taken the Programming Necessary to Obtain Earned Time Credits

Davis alleges that he is eligible for one year and fifteen days of Earned Time Credits based on programming and work he has completed while in federal custody. *See* Pet. at PageID 12.  His claim, however, lacks any merit, because he has not taken the courses necessary to obtain these credits.

Among other measures, the First Step Act directs the BOP to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs[.]"  18 U.S.C. § 3632(a)(3). To comply with this directive, the BOP has established a list of Evidence-Based Recidivism Reduction (EBRR) programs and productive activities (PAs) that meet the definitions set out in the 18 U.S.C. § 3635.  *See* Vogt Decl., Ex. 2 (EBRR and PA Guide) at 1-5.  Accordingly, before an inmate can receive Earned Time Credit, he

16

or she must successfully complete EBRR programming or PAs related to one of the specific needs assigned to that inmate.  *See* Vogt Decl. ¶ 7; 18 U.S.C. § 3632(d)(4)(A); *Hare*, 2021 WL 391280, at *9.  An inmate may obtain 10 days of time credit for every 30 days he successfully participates in the EBRR programming or PA.  *See* 18 U.S.C. § 3632(d)(4)(A)(i).

Despite Davis's assertions, he has not yet completed enough programming hours to receive Earned Time Credits.  As noted above, the BOP has determined that Davis has needs in cognitions, finance/poverty, medical, recreation/leisure/fitness, and work.  *See* Vogt Decl. ¶ 6, Ex. 4 (Inmate Profile) at 1.   Davis has successfully completed a 28-hour Money Smart program that addresses his need in finance/poverty.  *See* Vogt Decl. ¶ 8, Ex. 2 (EBRR and PA Guide) at 4.

 Although Davis has completed several courses after his needs assessment, they do not qualify as an EBRR or PA and thus cannot serve as basis for obtaining Earned Time Credits.[3]  *See* Vogt Decl. ¶ 9.  Finally, Davis has not had any work assignments that would qualify for Earned Time Credits.  *See id.* ¶ 10.  Because 18 U.S.C. § 3632(d)(4)(A) allows for 10 days of credit for every 30 days (*i.e.* 240 hours) of successful programming, Davis is not yet eligible for any Earned Time Credits based on his completion of the 28-hour Money Smart class.  If he completes a total of 240 hours of relevant EBRR or PA programming that meet one of his assessed needs, he will then receive 10 days of credit**.**  *See Hare,* 2021 WL 391280, at *12.

---

[3]     While Davis has one class on his transcript that is FSA-eligible, the Basic GED Course, he took that class in 2015 – years before passage of the First Step Act – and did not complete that program.  *See id.*, Ex. 6 (Education Transcript) at 1.

Although somewhat unclear, Davis appears to argue that the BOP is wrongly denying him Earned Time Credits because the agency "prohibit[s] all citizen Inmates from other states incarcerated in . . . New Jersey eligibility for time credits toward release date." Pet. at PageID 7, 11. Davis is incorrect. As explained above, the BOP has not awarded Davis Earned Time Credits because he has not completed 240 hours of EBRRs or PAs related to an assessed need. The fact that Davis comes from a state other than New Jersey has no bearing on this decision. In any event, New Jersey statutes governing the care or treatment of inmates in state correctional facilities do not govern the Federal Bureau of Prisons.

Moreover, to the extent Davis claims he should receive Earned Time Credits for his participation in courses or activities that do not appear on the list of approved EBRRs and PAs, the Court should reject this argument. An inmate can only obtain Earned Time Credits when he or she "successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate. . . as set forth in the First Step Act Approved Programs Guide." *Hare*, 2021 WL 391280, at *9. A petitioner's belief that his participation in other courses should qualify as EBRRs does not entitle him to Earned Time Credit. Congress defined EBRR programming as "a group or individual activity that . . . has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism," and PAs as "a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low

18

risk of recidivating." 18 U.S.C. § 3635(3)(A), (5).  Based on these and other provisions of the First Step Act, the BOP awards Earned Time Credits for only those programs it has determined meet the statutory definitions of EBRR programming or productive activities.  Allowing Davis to obtain credits activities other than those designated as EBRRs or PAs would run counter to the First Step Act's purpose of encouraging inmates to participate in programs specifically designed to reduce recidivism.   The Court should not do so here.

In sum, because Davis has not completed 30 days of any approved EBRR program or PA related to his assessed needs since they were identified, he has not yet obtained Earned Time Credit toward pre-release custody.  The Court should therefore deny the petition in all respects.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss or deny the petition in its entirety.

Dated:  Newark, New Jersey
          April 9, 2021

                                    Respectfully submitted,

                                    RACHAEL A. HONIG
                                    Acting United States Attorney

                            By:     <u>s/ Kristin L. Vassallo        </u>
                                    KRISTIN L. VASSALLO
                                    Assistant United States Attorney
                                    *Attorney for Respondent*